All right, our third case for this morning is Orgone Capital against Daubenspeck and Mr. Olson? May it please the Court. My name is Kurt Olson. I represent the plaintiff appellants in this action. The issues presented here today are not just which statute of limitations would apply, but also what would be the trigger of the relevant statute of limitations in a case involving a fraud emanating from a Chicago-based securities dealer, Advanced Equities, that was brought in by a venture capital firm, Kleiner Perkins, to lure over 1,200 investors, the most significant percentage of which were investors. Most of whom are Illinois residents and who in total invested over $800 million in this company. So here's my problem with your theory. I have a number of issues, but if this had been brought directly under the Illinois statute, it's clear there would have been a three-year statute of limitations. If it had been brought directly under the Delaware statute, then it would have been a three-year statute, so that's Delaware. But because it's brought in Illinois forum under Delaware law, your theory is that it's five years somehow, that we add on another two years. And that's because you don't think three years from the date of sale isn't going to work for you. That's the first part of the Illinois statute. And you didn't have actual notice within the requisite time. And then your complaints about what is this other alternative, the date on which you had notice of facts that would have led to actual knowledge. All of that makes you short, I think, in time. All of that means you didn't file within time. And so the only thing that's going to save you is if you can get to that Illinois residual statute. No, Your Honor, we would disagree with that. The Illinois statute of limitations is different than the Delaware statute of limitations. Delaware, for one thing, does not provide for a private right of action for securities fraud. The Delaware Securities Act only applies to intrastate transactions, so it would default to common law. And in Delaware, common law fraud is a three-year statute of limitations, but it's a discovery rule. The Illinois Securities Law statute of limitations is not a discovery rule. It specifically says at D-2 that the person bringing the action begins the date the person bringing the action has notice of facts that in the exercise of reasonable diligence would have led to actual knowledge of the claim. So we believe, Your Honor, that we meet that definition. I don't see how you can, even looking only at your amended complaint, which refers to the congressional hearings that were taking place about this, hearings which I would think could even be the subject of judicial notice. Nobody can dispute the fact that Congress was holding hearings on this topic. Something was amiss, and why isn't that precisely the kind of notice of facts that ought to lead people to look into things? Your Honor, the interpretation of notice of facts as the plain text of the statute in every case has been actual notice. Actual notice of what? Not actual notice that there's a violation, because it would lead to actual knowledge of the violation. You had actual notice that there were hearings. You probably had actual notice of the PrivCo report, too. No, Your Honor. We expressly denied that we had notice of any facts that underpinned the initial action that was filed in Delaware, the ATLAS action. That includes the congressional hearing. That includes the PrivCo report. Are you allowed to say you didn't know about something as public as the congressional hearings? The district court, Your Honor, instructed us to expressly plead when we learned of facts. Right, and that's when you deleted everything from your first complaint. I know. Yes, Your Honor. But, Your Honor, I believe what is being posited is that every investor is presumed to have knowledge of everything that goes on in the public arena. And that, because that rule would basically swallow the whole. So, for example, in the Whirlpool decision, which came out in 1995, there's a reference in the appellee's brief that the Internet is an information superhighway. But a lot has changed in the past 23 years with the Internet. And I would liken it to the equivalent of a contaminated information superfund site. You can find anything on the Internet. There is nothing that would trigger an investor in this case to be following everything that went on with congressional hearings or the PrivCo report, which was not picked up by any mainstream media publication. This is unlike a typical publicly traded stock, where there is a precipitous price drop upon the disclosure of information, and then it wakes investors up to say, what happened? Fisker was a private company issuing securities through a private placement memorandum, and the company was dead in the water for six months prior to the congressional hearings. Nothing had been going on. They had laid off the majority of their workforce. They were not producing any cars. And so there was nothing precipitous that would have caused somebody to be paying attention to the congressional hearings, which, by the way, were not televised as the district court held. And so the idea that the world was put on notice of them is not supported by any evidence in the record. In addition, with respect to the PrivCo report, were they covered in the Wall Street Journal? The congressional hearings may have been covered in the Wall Street Journal. You would think inquiry notice and appearance in the Wall Street Journal would be pretty much the same thing in the investment world, wouldn't you? No, Your Honor. Just simply the fact of the congressional hearings does not put anybody on inquiry notice. Congress conducts hearings all the time. Look, my question must not have been clear enough. The Wall Street Journal would not say, Congress is holding a hearing. It would talk about the subject of the hearing and some of the things that were testified to at the hearing. I mean, I'll check. One of the benefits of having this little computer is that you can search the Wall Street Journal. So I'll be looking. Okay. Yes, Your Honor. But here's the point. Even if it did mention, and we don't dispute that the congressional hearings occurred, but even assuming that an investor, a reasonable investor, was aware of the hearing, nothing came of that hearing. And in fact, as we expressly pled, the Department of Energy's witness in those hearings expressly denied that the company had misled them. And in fact, Congress did not find any misconduct. And so this is a risky company. Everybody knows that. And the mere failure of a risky company with the mere fact that Congress was investigating it, in and of itself, is not something that would necessarily, as a matter of law, on a motion to dismiss, constitute notice of facts. So wasn't there a press release that you've submitted saying that this report concluded that the $142 million was now tied up in worthless Fisker stock? It's $192 million, Your Honor. And that is a docket number 98, Exhibit F. And if you look at that, there is no mention of fraud or misconduct. It is simply a debacle, which it was. And it's worthless. Right. So wouldn't that make you – I mean, I'm thinking of the plaintiff's bar in these cases. You know, if there's a debacle, wouldn't people look into whether there had been some misconduct leading to it? Precisely, that's one of the points, Your Honor. That's the date upon which you have notice of facts that ought to raise a red flag in your mind. That's how I see this Illinois statute. The debacle, Your Honor, was long before April of 2013 in the sense that the company had had problems. And as I said earlier, the company had been dead in the water with massive layoffs for months prior to that. But the issue under the ISIL is actual notice of facts. And as Judge Felser ruled in country – Of red flag facts, of facts that would lead you to look into things, not of the ultimate problem. Yes, Your Honor. And as Judge Felser ruled in country-wide, even if it's widely circulated, she read the ISIL's plain text to read if the investor bringing the action – not a reasonable investor, but the investor bringing the action in the exercise of – had notice of facts in the exercise of reasonable diligence would amount to actual knowledge of a violation. And as Judge Felser ruled, and we saw it in our brief, in the exercise of reasonable diligence – Would lead to the actual knowledge. It's the lead to part where I see the investigation, the inquiry notice, as we would call it. You know, you find out some things that don't smell right. And so you now learn those facts. Now you push further. You look into it. You exercise reasonable diligence to see if something's wrong. Yes, Your Honor. But as Judge Felser said, even if it's widely publicized, if the plaintiff who brought the action was unaware of those facts, that's not good enough to trigger the notice of facts as plainly written in the text. And I might add there's two opinions, Your Honor, that I want to highlight. It's the Blumenthal decision from the Illinois Appellate Court and the Lucas decision. And Blumenthal illustrates this fundamental principle. So what happened there is that the defendant brought in minutes of a shareholder meeting that showed that the plaintiffs attended the meeting where the complaint of misconduct was discussed, including the complaint by the International Gaming Board. And so they brought in evidence that showed that the plaintiffs possessed or they were there. Not that it was out somewhere in the Internet sphere or somewhere else, but they were actually there. And that is why we argue, Your Honor, that notice of facts means exactly what it says. What if they slept through the meeting? Does that count? Yes, Your Honor. It's the possession of facts. But they don't possess them if they slept through the meeting. They were provided to them. It was made available. It was made available to them specifically. And why not the same here? Made available, if they pick up the Wall Street Journal or if they are paying attention to their investment at all, if they check on Fisker every now and then, surely something would pop up. Yes, Your Honor. There was an Internet in 2013, I can assure you. I understand that, Your Honor. And I'll be brief because I want to save a couple minutes for a little. That's fine. If, through discovery, the defendants introduced emails from our clients that show that they were talking about the Privco report or that they were talking about the congressional hearing, that would be evidence under, for example, Blumenthal or Lucas that would trigger the notice requirement or the notice of facts. But it cannot simply be because something appears widely on the Internet. Just as Judge Felser ruled, the plain text of the statute does not allow for simply being widely publicized. There is no inquiry notice. And if the legislature wanted to use reasonable diligence in terms of uncovering facts, not sticking your head in the sand, they could have put reasonable diligence in front of notice of facts. And, Your Honor, I have 2 minutes and 30 seconds. You may save the rest of it. That's fine. Thank you. All right. You must be Mr. Celio? Yes, Your Honor. You're not Melody Wells. All right. May it please the Court, my name is Michael Celio. I represent appellees Kleiner Perkins, Ray Lane, and John Doar. I agree with my friend opposite. There are 2 basic issues before the Court. How long is the statute of limitations and when did it begin to run? The statute of limitations is 3 years. The ISL has a statute of limitations that applies to any claim quoting reliant upon matters for which relief is granted by the ISL. What is the ISL grant relief? So your opponent didn't even raise that. I mean, that would include common law sorts of claims, even things under Delaware common law. That's absolutely right. It's very broad. It is meant to apply to anything, in its own words, fraud in connection with the sale or purchase of any security. One only needs to read the first 20 pages of appellant's brief in this case, and you see that that's precisely what is alleged here. It is alleged to be a fraud in connection with the purchase of the securities of Fisker Automotive. In every case cited by the parties, the courts apply the same inquiry to determine what statute of limitations applies. The court looks at what type of claim is asserted, and the question is, does the ISL provide relief for that type of claim? Let me fast forward you to what we were talking about, which is what do we do with the case under subpart 2 of the alternative ground, if you neither knew nor should have known as of the date of sale. What if the party bringing the action, in my hypothetical, slept through the meeting, or decides to go live on a desert island for a year and just never gets notice of the facts because they've just had it with today's world and they would like to, understandable enough, they would like to just opt out. How does that person fit under subpart 2? I think you need to read subpart 1 and subpart 2 together, and the difference is knowledge in subpart 1 and notice in subpart 2. What is enough to give somebody notice of facts? Is this essentially a reasonable person who would have notice of facts, not my desert island person or the sleeper through the meeting, or is it actual notice of facts that would lead to further investigation? So the ISL itself, Your Honor, resolves that question if you go above the exceptions into the body of it, and the papers don't focus as much on this, but I think it's important in interpreting the statute to read the entire statute. And it says, so the default is that three years from the date of sale, and then provided that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known. So it's a reasonable person, and it's right there in the statutory text. You don't even need to get to the exceptions in this case. The last sale alleged in either complaint is 2012, almost six years to today. I believe it's six years to tomorrow. So there were three years in which to bring the claims. So 2015 was the end. You know, this case is brought in 2016. To go directly to your question, it is a reasonable person. The two subparts. I think that's the big difference between the two of you. I think, you know, Mr. Sandberg thinks this is a subjective individual person who just doesn't happen to have notice, in which case it would be a longer time, of course, and the burden to show access to facts would be different, and you're arguing reasonable person. Mr. Olson. Mr. Olson is my adversary. Oh, sorry. I'm in the wrong cases. That is the difference, and I think that appellants here, I think, unintentionally keep adding the word actual for the word notice to the statute here. And I think fidelity to the statutory text requires that this court read it as it's written by the Illinois legislature. And so the language is the date upon which the party bringing the action has notice of facts. A concept that hasn't been discussed as much in the papers but I think is important and is in the cases that everyone cites is the concept of constructive notice as opposed to inquiry notice. Constructive notice is a subset of facts, and Mr. Olson referenced the Whirlpool case. There are certain events that happen in the world where even if you're on a desert island, you are presumed to know them. How far that goes is an interesting academic question. I think you could write fascinating articles about where that line might be in a given case, but it's not hard in this case. Here we have a congressional hearing. As you said, that's something the existence of which this court, the court below, could take judicial notice of. Can I just interrupt and say that's one of the weird things about this case because we have the original complaint, the amended complaint. The normal rule is once the amended complaint is in, the original complaint is just out the window. Should there be later proceedings? I'm sure one could use as an evidentiary matter materials in the first one, but to bind somebody as a judicial admission to the superseded complaint is a problem. Not a judicial admission in the way we usually use that word. A judicial admission is something- Right. It's not a Rule 36. Precisely. That's something you're stuck with. It's something that basically I would have to present evidence to get out of if I had made the admission. What the district court was doing here was a little different, I think, and it's unique to the facts of this case. There were hundreds of paragraphs of pleading about these congressional hearings in the Pritikin report. In the first- In the first initial complaint. Right. And the district court said, that's a problem for you plaintiffs. You've pleaded yourself out of court. But she said, I'm not going to stick- She actually said the opposite. She said, I'm not going to stick you with that. And she cited the case that the plaintiffs, the appellants here, rely on so much. I think it's 188 is the number. 188 versus Trinity. What she said is, you can plead you were mistaken. You can plead additional facts. You can plead context. You can plead a lot of things that sort of show why it isn't what it appears to be. What you can't do is create a Rule 12 dispute of fact with a delete key. That, I think, is all the district court is saying here. I don't think she's saying, you said it, ha ha, you're done. I think that this is a very experienced district judge who knows the law and knows Rule 12 very, very well. And actually cited the relevant authorities. So she was very aware of it. Now, there are some references anyway in the second complaint to the hearings and some of these events, right? There are references to the Privco report still, or at least the documents cited in the report. But what's interesting about the second complaint is there was absolutely an effort to satisfy subsection 1. There was a lot of pleading about what they actually knew. Although even that was very carefully crafted. The district court did not like the fact that there was a key TAM action that we haven't talked about today. Is there a third thing? Appellants below actually took that head on and said, we didn't know about it. Well, it was unsealed in December, right? I believe it was. After they filed their complaint, it was unsealed. I believe it was unsealed before, but I might be mistaken. But the point there was that the district court pleaded additional, that the appellants below specifically addressed it. And so that satisfied the district court as to the key TAM action. The fact that they were silent about their knowledge of the congressional hearings, the district court took note of. Because they were very specifically saying that they had no knowledge of everything they would have needed to bring a claim. But they didn't say that they weren't aware of the congressional hearings at all. And I think that that's noteworthy under the circumstances because not only did the Wall Street Journal report on it, not only did the Washington Post report on it, not only did the New York Times report on it, this actually had wider cultural currency. It was actually, and I believe the Hollywood Reporter, because Leonardo DiCaprio, the record shows, was one of the first investors, received one of the first cards, not an investor, pardon me. So the Hollywood Press was looking at this. So the district court was skeptical that even the Desert Island person could potentially have escaped knowledge. But knowledge doesn't matter because it's the earlier of the two events. It's either knowledge or the date upon which the party bringing the action has notice of facts. And that's why the Whirlpool case is so important. Well, that's why I was calling them the red flag fact. I mean, I don't understand part two to mean you know all the problems, but you know enough to cause you to look into it. And I think that there's, you know, and here they actually knew a fair bit of the problems because I want to cite something from the initial complaint in this action. This is paragraph eight. And what plaintiffs below appellants here said is the House Fisker hearing revealed that though the DOE took decisive action to freeze its loan in June 2011 after discovering the company had lied about meeting the karma production milestone, neither the DOE nor the company disclosed this material fact. So the hearings, the congressional hearings here, actually included allegations of fraud. The word fraud comes up, or at least the word lies or misled. This is about as extreme a case as you'll get for inquiry notice. So I think that that's relatively straightforward. I'm happy to answer any further questions the court has, but I'm at the end of my prepared remarks. Seeing none, thank you very much. Thank you, Ms. Rasmussen. Anything further, Mr. Olson? Yes, Your Honor. A couple bullet points. The statute of limitations for the ISIL under D2 refers to the plaintiff bringing the action. Specifically, the plain text does not include a reasonable person. It is not an investor or a reasonable person. It is the plaintiff. That indicates, just as we have been arguing, that actual notice to the plaintiff bringing the action is what's required under the plain text of the statute. In terms of what do you do with the language that says, in the exercise of reasonable diligence should have known. That's objective notice language, not plaintiff-specific language. Reference to the reasonable person. Yes, Your Honor. And the reasonable person applies, as we mentioned in our briefs, is in harmony with D2 where the reasonable person or reasonable due diligence modifies actual knowledge, just as Your Honor. But the Illinois legislature carved out notice of facts. And I might add that in 2013, the Illinois legislature modified the ISIL to take out the statute of repose. So normally a five-year statute of repose. Modify what? They amended the statute to take out the statute of repose. And so they knew full well that there could be actions that could be coming because the idea that the Illinois legislature wanted to do was to hold wrongdoers accountable. In terms of the complaint, the initial complaint, counsel, we have our own characterization because we wrote the complaint, but we are the ones, the counsel, who used the word reveal. There was no discussion that there was fraud in the congressional hearing. There was a question about whether or not there was a misrepresentation, and the DOE specifically denied it. And as we put in our brief, investors are entitled to rely on the veracity of government officials who had clear access to far more information than plaintiffs. And if the DOE says they didn't lie, then a reasonable investor can rely on that, as did our plaintiffs. We, as the attorneys, in looking at this, we may have had a different take, and we made an allocation. And just as Your Honor's case in Moriarty, you can have inconsistent pleading. And we didn't try to pull a fast one with the district court. We merely took out the allegations about the Privco and congressional hearing to avoid any confusion as to when our plaintiffs knew. It puts the district court in a difficult position, though, because obviously you knew about these things, or they couldn't have been in the first complaint. Whether, you know, what the legal relevance of this knowledge is, one, you know, I suppose that's what we're dealing with. The plaintiffs expressly pled, Your Honor, that they did not know. So the attorneys who uncovered it. But you're in a principal-agent relationship. I don't know that you can drive such a wedge between what the lawyers know and what the clients know. Well, the clients did not contact us until after December 2013, which is within the statute of limitations. Just as Judge Pallmeyer noted in her opinion when she said, taking all reasonable inferences and even taking all reasonable inferences in plaintiffs' favor, it's two years and ten months. That hardly suggests due diligence. But two years and ten months is the statute. Okay. I think you need to wrap up. Thank you, Your Honor. Thank you. Thanks to both counsel. We'll take the case under advisement.